IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

STEVEN JOSEPH KLEIN              )
                                 )
v.                               )    No. 1:20-cv-0066
                                 )
KILOLO KIJAKAZI[1]               )
Commissioner of Social Security  )


**To:** The Honorable William L. Campbell, Jr., District Judge


# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") as provided under Title II of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 27), to which Defendant has filed a response. (Docket No. 29.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 27) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

## I. INTRODUCTION

Plaintiff filed an application for DIB on June 1, 2018. (*See* Transcript of the Administrative Record (Docket No. 23) at 88).[2] He alleged that he was unable to work, as of the alleged disability onset date of November 29, 2017, because of arthritis, anxiety, depression, memory loss, back problems, and sleep apnea. (AR 88, 213.) The application was denied ion October 2, 2018. (AR 15.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Sarah Ehasz on October 7, 2019. (AR 33.) The ALJ denied the claim on December 2, 2019. (AR 12-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 31, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed a complaint in this Court seeking review of the ALJ's decision.

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since November 29, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus; centrilobular emphysema/obstructive sleep apnea (OSA), peripheral neuropathy, hearing loss, major depressive disorder, cognitive disorder/traumatic brain injury (TBI), anxiety, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:
    a. Twenty pounds occasionally, ten pounds frequently;
    b. Sitting, standing, and walking six hours each;
    c. Occasional ramps and stairs, no ladders, ropes, or scaffolds;
    d. Frequent balancing and stooping;
    e. Occasional kneeling, crouching, and crawling;
    f. No work at unprotected heights or around dangerous machinery;
    g. No operation of a motor vehicle;
    h. Limited to occasional exposure to weather, humidity and wetness, dust, odors, fumes, and pulmonary irritants;
    i. No exposure to extreme cold or heat;
    j. Limited to simple and routine tasks as well as simple work related decisions; and
    k. Occasional interaction with supervisors, co-workers, and no interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 27, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2017, through the date of this decision (20 CFR 404.1520(g)).

(AR 17-27.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable

impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform a range of light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 17-27.)

**C. Plaintiff's Assertions of Error**

Plaintiff presents two assertions of error: (1) that the ALJ failed to properly evaluate the medical opinion evidence; and (2) that the ALJ failed to properly evaluate the consistency of his allegations regarding the severity of his impairments. (Docket No. 28 at 1.) Plaintiff therefore requests that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id.* at 19.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

**1. Medical Opinion Evidence.**

Plaintiff's first assertion of error involves the opinions provided by psychologists Tad Gorske and Lanny Detore regarding the severity of Plaintiff's mental impairments. On May 25, 2017, Dr. Gorske conducted a neuropsychological evaluation of Plaintiff, which yielded an Axis I diagnosis of "depressive disorder [not otherwise specified]" and "cognitive disorder [not otherwise specified]." (AR 909.) Dr. Gorske did not describe any functional limitations resulting from these

impairments but instead recommended that Plaintiff maintain a healthy diet, regularly exercise, and "maintain[] low levels of stress, anxiety, and depression." (AR 909.) On August 1, 2018, Dr. Detore completed a check-box form "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" in which he opined that, based on a primary diagnosis of "cognitive impairment" purportedly resulting from a concussion sustained in 1994, Plaintiff has "no useful ability to function" with respect to 15 of the 25 total mental tasks considered, including maintaining regular attendance, making simple work-related decisions, performing at a consistent pace without excessive breaks, dealing with normal work stress, and responding appropriately to criticism from supervisors. (AR 430-31, 539-40, 1100.)[3] Plaintiff contends that the ALJ committed reversible error by effectively rejecting these opinions.

An ALJ's analysis of medical opinions issued in connection with applications for disability filed after March 27, 2017, is governed by 20 C.F.R. § 404.1520c. The regulation makes clear that the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id.* § 404.1520c(a). The ALJ is instead directed to consider the "persuasiveness" of the medical opinions based on five categories that include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies and evidentiary requirements. *Id.*

---

[3] The form asks the provider to judge Plaintiff's ability to perform these mental tasks on a five-point scale of progressive severity: "Unlimited or Very Good"; "Limited but satisfactory"; "Seriously limited, but not precluded"; "Unable to meet competitive standards"; and "No useful ability to function." (AR 430, 539.) Confusingly, Dr. Detore found that Plaintiff was both "unable to meet competitive standards" and possessed "No useful ability to function" in the area of "carrying out very short and simple instructions," but did not tick any box corresponding to Plaintiff's ability to "maintain attention for two hour segment," immediately under the "carrying out very short and simple instructions" row. (AR 430, 539.) While this appears to represent little more than a scrivener's error, it prevents the reader from understanding which severity finding applies to these two categories of mental functioning.

7

§ 404.1520c(a)-(c). The two most important factors in the ALJ's evaluation are supportability and consistency. *Id.* § 404.1520c(a).

The ALJ dismissed Dr. Gorske's "opinion" in part because it was completed more than six months prior to the alleged onset of Plaintiff's disability. (AR 25.) Plaintiff argues that it is "facially absurd" to reject an opinion rendered so close to the alleged onset date since the results of Dr. Gorske's neuropsychological testing would surely remain relevant to Plaintiff's mental condition six months later. (Docket No. 28 at 12-13.) Although it is true that a "claimant must provide medical evidence of his impairments during the time he says that he is disabled," *Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011) (internal citation omitted) (cleaned up), the Court agrees that an ALJ's decision to reject outright a medical opinion produced so close to the alleged onset date based solely on this minimal lapse of time would likely constitute reversible error.

Unfortunately for Plaintiff, that is not what occurred. The ALJ instead declined to weigh the opinion because it was not "relevant to the current period of review other than to show a longitudinal history of the claimant's impairments and treatment." (AR 25.) Put another way, the ALJ did not evaluate Dr. Gorske's report because it does not meet the baseline definition for "medical opinion" under the relevant regulation. *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions …"). The "Outpatient Neuropsychological Assessment" completed by Dr. Gorske consists largely of a narrative description of Plaintiff's prior medical history and Dr. Gorske's observations following a battery of behavioral tests, the latter of which reflected generally mild findings:

> [Plaintiff] likely has average premorbid ability and is performing normally on tests of verbal story memory, visuoconstructional ability, spatial orientation, letter

> fluency, attention, problem solving and abstract reasoning. He demonstrates low average to mild impairment in visuospatial memory, semantic fluency, naming, and working memory.

(AR 908.) Dr. Gorske additionally states that Plaintiff demonstrated "moderate to severe impairment[] in verbal list learning memory and psychomotor speed" (AR 908), but this finding says nothing about how Plaintiff is functionally impacted given that "moderate to severe" is not defined anywhere in the report. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (noting that a claimant's impairment "may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal citation omitted). For these reasons, the ALJ committed no error by declining to weigh the assessment.

In evaluating Dr. Detore's opinion, the ALJ provided the following reasons for concluding that the findings were "unpersuasive":

> The evidence of record does not support the limitations assessed by Dr. Detore. Specifically, limitations assessed by multiple medical experts limit the claimant to only moderate limitations (*see* Exhibit 1A, 2F, and 9F). In addition, there is no indication that Dr. Detore ever conducted any cognitive testing of the claimant and his opinions were vague, limited, and provided in letter or check box form with little support for his conclusions.

(AR 24.) Plaintiff first attacks this justification by arguing that Dr. Detore's opinion should have been deemed "at least as persuasive" as the opinion of Dr. David Newman—a consultative psychologist whose much less restrictive medical opinion was found to be "very persuasive" by the ALJ (AR 24, 521-23)[4]—because Dr. Detore's opinion was "plainly based on more evidence."

---

[4] Dr. Newman concluded that Plaintiff was only "mildly" impaired in his ability to understand, remember, and carry out simple instructions, and in his ability to respond appropriately to usual work situations (meaning that his ability to function in these areas "independently, appropriately, effectively, and on a sustained basis is slightly limited"), but that he was "moderately" impaired in his ability to understand, remember, and carry out complex instructions, and in his ability to interact appropriately with supervisors, co-workers, and the public (meaning that his ability to function in these areas "independently, appropriately, effectively, and on a sustained basis is fair"). (AR 521-22.)

(Docket No. 28 at 13.) This claim ostensibly rests at least partially on Dr. Detore's status as a treating provider, but treating providers are afforded such deference only under the prior regulations, *see* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) …"), which do not apply to Plaintiff's current claim.

The applicable regulation instead provides that the Commissioner need only articulate how the "supportability" and "consistency" factors were considered by the ALJ. *Id.* § 404.1520c(b)(2). Here, the ALJ appropriately noted that the form completed by Dr. Detore offers no significant explanation for the extremely severe restrictions contained therein, nor does it appear to be based on any testing of Plaintiff's cognition that might support such restrictions. *See id.* § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be."). Moreover, the ALJ highlighted the substantial discrepancy between Dr. Detore's findings and the mild mental limitations suggested by both Dr. Sharon Becker Tarter—a non-examining state agency psychologist—and Dr. Newman. (AR 82-84, 521-23.) The ALJ also highlighted records documenting Plaintiff's treatment with the Department of Veterans Affairs ("VA"), which included a finding by Dr. Melissa Marcario that Plaintiff's mental symptoms "are not severe enough either to interfere with occupational and social functioning or to require continuous medication." (AR 384, 391.) Such evidence clearly bolsters the ALJ's evaluation of Dr. Detore's opinion. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be.").

10

Case 1:20-cv-00066 Document 30 Filed 02/02/22 Page 10 of 16 PageID #: 1226

Nonetheless, Plaintiff claims that the ALJ's emphasis on the absence of cognitive testing in Dr. Detore's records is misplaced given that Dr. Gorske performed a litany of tests as part of his neuropsychological evaluation. But Plaintiff fails to carry his burden of explaining how such testing actually supports the severity of the limitations proffered by Dr. Detore. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, [the claimant] must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."). In reality, the results of the neuropsychological evaluation appear to weigh *against* Dr. Detore's opinion, with Dr. Gorske concluding that Plaintiff suffers from only mild depression and a "very mild" level of anxiety, and that his symptoms are very unlikely to have been caused by a concussion Plaintiff suffered almost 30 years ago. (AR 907-09.) In contrast, Dr. Detore claims that Plaintiff experiences "chronic," "consistent," and "severe" depression and anxiety, and that Plaintiff's cognitive issues are a direct result of the decades-old concussion. (AR 1100-03.)

Finally, Plaintiff again protests the ALJ's favorable weighing of Dr. Newman's opinion in light of Dr. Newman's lack of access to relevant records documenting Plaintiff's cognitive issues, namely Dr. Gorske's report. However, the Court is unaware of any regulation that requires the ALJ to accord greater weight to an opinion rendered by a provider with full access to a claimant's treatment history. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a complete or more detailed and comprehensive case record. The opinions need only be supported by evidence in the case record.") (internal citation omitted) (cleaned up). Plaintiff notes that Dr. Newman "failed to even diagnose cognitive disorder" (Docket No. 28 at 15), although the Court reiterates that the stated basis for Dr. Detore's diagnosis of cognitive impairment is a concussion that

Dr. Gorske specifically dismissed as having any causal relationship to Plaintiff's mental impairments. (AR 908-09, 1100.) Dr. Gorske's chief concern was instead that "depression is contributing to [Plaintiff's] difficulties" (AR 908), which corresponds to the primary diagnosis of "major depressive disorder" on which Dr. Newman based his opinion. (AR 519-20.) There is therefore little to suggest that a prior review of Dr. Gorske's evaluation would have meaningfully impacted Dr. Newman's opinion.

Here, the ALJ appropriately credited Dr. Newman's opinion based on the results of an examination—which found that Plaintiff's claimed memory deficits were "not particularly demonstrated today"—and its consistency with other evidence in the record. (AR 24, 521.) Unlike that opinion, Dr. Gorske's evaluation yielded only broad diagnoses and general recommendations for treatment, which provide little insight into Plaintiff's mental functioning. *See Parmley v. Colvin*, No. 14-121, 2015 WL 3619212, at *4 (E.D. Ky. June 9, 2015) ("The mere diagnosis of a condition does not necessarily establish a work-related limitation.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)). And as previously discussed, the ALJ explicitly considered the supportability and consistency of the relevant medical opinions, which fulfills her role to weigh the evidence, resolve any material conflicts, and make independent findings of fact. *Blair v. Comm'r of Soc. Sec.*, 178 F.3d 1293 (table), 1999 WL 196497, *2 (6th Cir. March 26, 1999). Because such circumstances preclude a finding of reversible error, *see Lowe v. Saul*, No. 3:19-cv-0524, 2021 WL 1299039, at *11 (E.D. Tenn. Apr. 7, 2021) ("[A]n ALJ's decision is not subject to reversal even where there is significant evidence in the record to support a conclusion other than the one reached.") (citing *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-855 (6th Cir. 2010)), this assertion of error is rejected.

### 2. Consistency of Plaintiff's Allegations.

As part of the unfavorable administrative decision, the ALJ concluded that although Plaintiff's medical impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements as to the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 21.) Plaintiff contends that this finding is unfounded and warrants reversal of the Commissioner's decision. The Court disagrees.

Plaintiff dedicates much of this section of his brief to a general attack on district courts and the Commissioner for "frequently us[ing] the word credibility as describing part of the ALJ's analysis in a Social Security case," even though the term "credibility" does not appear in the applicable regulation. (Docket No. 28 at 17-18.) Plaintiff correctly notes that the term instead comes from Social Security Ruling ("SSR") 96-7p, which called for the ALJ to make a "credibility" determination based on a claimant's statements about the limiting effects of any alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). This was rescinded in 2016, however, and replaced by SSR 16-3p, which sets forth a slightly different standard for evaluating a claimant's subjective statements that requires the ALJ to consider and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). This evaluation is based on seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms;

13

and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).

While the Court appreciates Plaintiff's attention to revisions in the relevant regulatory framework, there appears to be no substantive change in the ALJ's analysis and no reason to assume that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Reviewing courts still accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), and a claimant seeking to overturn the ALJ's decision continues to "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). The Court adopts the approach expressed by a sister district court: "While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

Turning to the substance of Plaintiff's argument, the Court finds no error in the ALJ's analysis. As noted by Defendant, the ALJ considered the relatively limited and conservative treatment Plaintiff received despite his allegations of disabling physical symptoms (AR 21-22), as was appropriate. *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (noting that a "conservative treatment approach suggests the absence of a disabling condition"). With respect to the alleged mental impairments, the ALJ noted mild findings from multiple providers that contradicted the severity of Plaintiff's allegations, as well as improvements in Plaintiff's

14

depressive disorder with the use of medication (AR 22-23), which provides further support for the ALJ's determination. *See Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 404 (6th Cir. 2018) ("But because [the claimant] had only moderate limitations, showed improvement, and sought no constant treatment for her mental limitations, the ALJ was justified in concluding that this objective medical evidence did not confirm the severity of her subjective reports of mental impairments."); *see also Workman v. Comm'r of Soc. Sec.,* 105 F. App'x 794, 800 n.3 (6th Cir. 2004) ("The ALJ is permitted to consider the effectiveness of medication used to control pain and other symptoms associated with a claimant's impairments.") (citing 20 C.F.R. § 404.1529(c)(3)(iv)).

Plaintiff attempts to overcome these findings by emphasizing his "strong work history" that spanned more than 20 years. (Docket No. 28 at 17.) While the Court agrees that such a background is both commendable and "an appropriate consideration" in evaluating the consistency of a claimant's subjective complaints, *Sears v. Colvin*, No. 1:11-cv-0096, 2015 WL 3606800, at *4 (M.D. Tenn. June 8, 2015), its omission from the ALJ's analysis does not constitute reversible error. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [the claimant's] work history when assessing his credibility[.]"). This is especially true given the other evidence cited by the ALJ in support of her determination. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting that "work history is just one factor among many, and it is not dispositive"); *see also Legg v. Colvin*, 574 F. App'x 48, 50 (2d Cir. 2014) ("[I]t bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.") (quoting *Schaal v. Apfel,* 134 F.3d 496, 502 (2d Cir. 1998)).

15

Case 1:20-cv-00066 Document 30 Filed 02/02/22 Page 15 of 16 PageID #: 1231

Additionally, the ALJ appropriately highlighted Plaintiff's reports to multiple providers that he had been fired from his most recent employment for reasons unrelated to his alleged impairments (AR 22-23), which included his predilection for being "extremely lascivious," his ongoing attempts to proselytize coworkers, and "nicknaming a guy sponge bob." (AR 376-77, 517.) Such evidence "casts doubt" on the reasons Plaintiff is not working, *Mendiola v. Soc. Sec. Admin.*, No. 3:15-cv-0995, 2016 WL 5800470, at *5 (M.D. Tenn. Sept. 30, 2016), and provides further support for the ALJ's conclusion. For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence and therefore rejects this assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (Docket No. 27) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge